**E-FILED on**    11/16/09

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PIERRE DUBE,<br><br>            Plaintiff,<br><br>     v.<br><br>NETMANAGE, INC. LONG-TERM DISABILITY PLAN,<br><br>            Defendant. | No. C-09-01470 RMW<br><br>ORDER GRANTING DEFENDANT'S MOTION TO VACATE DEFAULT JUDGMENT<br><br>**Re Docket No. 14** |

Defendant NetManage, Inc. Long-Term Disability Plan (the "Plan") moves to vacate the default judgment entered against it on July 29, 2009.[1] Having considered the papers submitted by the parties, and for good cause appearing for the reasons set forth below, the court grants the motion to set aside the default judgment entered against NetManage.

## I. BACKGROUND

**A.     Dube's claim for long-term disability benefits**

---

[1] Although defendant only moves to set aside the default judgment, its papers make clear that it seeks to set aside the default as well. Plaintiff's response suggests that he understands that defendant seeks to set aside both the default and default judgment. Therefore, the court treats the motion as one to set aside both.

NetManage Inc. ("NetManage") hired Plaintiff Dube as an Information Technology manager in March 2001. Decl. of Cassie Springer-Sullivan in Supp. of Pl.'s Mot. for Default J. (hereinafter "CSS MDJ Decl.") Ex. 10. Through his employer, Dube was a participant in the Plan, which offered long-term disability benefits to employees and was funded and administered by Reliance Standard Life Insurance Company ("RSL"). Compl. ¶¶ 5, 6.

On May 18, 1998, several years prior to beginning his employment for NetManage, Dube fractured his left arm and was diagnosed with Reflexive Sympathetic Dystrophy. *Id*. ¶¶ 7-8. The condition is characterized by pain, sensitivity to touch and impairment of motor skills, beginning first in one limb and then spreading to other areas. *Id*. ¶ 9.

Dube became entitled to disability benefits from the Social Security Administration beginning in November 2002. *Id*. ¶ 12. On December 1, 2003 RSL approved Dube for Long Term Disability benefits of $4,035.80 a month, retroactive to September 27, 2002. *Id*. ¶ 13; CSS MDJ Decl. Ex. 3. RSL found that Dube was "Totally Disabled" as defined by the policy. Mot. for Default J. 3. However, RSL suspended Dube's benefits on January 27, 2005 because Dube had not submitted all of the required medical information to RSL. *Id*. at 4. After receiving medical information from Dube's physician, Dr. Wexler, RSL decided to terminate Dube's Long Term Disability benefits because it decided that "mental and nervous factors form the basis" of Dube's disability. CSS MDJ Decl. Ex. 6. The Plan's Long Term Disability policy provided Total Disability benefits for a two-year period where mental or nervous factors caused or contributed to the disability. *Id*. Ex. 4. Dube had already exceeded the two-year period on January 27, 2005. On the grounds that he is totally disabled because of reflexive sympathetic dystrophy and not a mental condition, Dube appealed RSL's decision to terminate his benefits. Mot. for Default J. 4. RSL concluded that it had correctly decided to terminate Dube's Long Term Disability benefits because psychiatric conditions caused or contributed to Dube's disability and because there was no clinical proof of his impairment. CSS MDJ Decl. Ex. 7.

**B.     The Merger of Micro Focus, Inc. and NetManage**

On June 18, 2008, MF Merger Sub, Inc., a Delaware corporation that was a wholly-owned subsidiary of Micro Focus (US), Inc., merged with and into NetManage. Aff. of Wood ¶ 1.

NetManage then merged with and into Micro Focus (US), Inc. on August 31, 2008. *Id.* ¶ 2.

### C. NetManage's Conduct

On April 3, 2009, Dube brought this claim against NetManage under 29 U.S.C. § 1132(a)(1)(B), which permits a participant in or beneficiary of an employee benefit plan to bring an action to recover benefits due under the terms of the plan, enforce his rights under the plan or clarify rights for future benefits under the plan. NetManage was served on May 1, 2009 through CT Corporation, its then-agent of process in California. Aff. of Wood ¶ 3. CT Corporation then forwarded the complaint and summons overnight to Daniel Torres, who was the Tax Manager for NetManage prior to the merger, at the address CT Corporation had on file for Mr. Torres located in Micro Focus (US), Inc.'s Mountain View office (the "Mountain View Office"). *Id.* ¶ 4. Since the merger, however, Mr. Torres has become the Finance Controller for Micro Focus Limited, and has been working from Micro Focus Limited's office in Newbury, United Kingdom (the "Newbury Office"). *Id.* ¶ 5. Uyen Nguyen, an administrative assistant in the Mountain View Office, received the complaint and forwarded it overnight to Mr. Torres at the Newbury Office on May 5, 2009. *Id.* ¶ 6. Upon receiving the complaint, on May 6, 2009 Mr. Torres delivered the complaint to Paul Milnes, a Human Resources Business Partner in the Newbury Office. *Id.* ¶ 7.

On June 11, 2009, CT Corporation received a Request for Entry of Default, and sent the Request for Entry of Default overnight to Mr. Torres at the Mountain View Office. *Id.* ¶ 8. On June 12, 2009, default was entered against defendant. On June 15, 2009, Uyen Nguyen received the Request for Entry of Default and forwarded it to Mr. Torres at the Newbury Office. *Id.* ¶ 9. Mr. Torres then gave this Request for Entry of Default to Mr. Milnes on June 16, 2009. *Id.* ¶ 10.

On June 26, 2009, CT Corporation received a Notice of Motion and Motion for Default Judgment. *Id.* ¶ 11. The documents then passed hands again from Uyen Nguyen on June 30, 2009 to Mr. Torres at the Newbury Office, who then delivered the documents to Mr. Milnes on July 1, 2009. *Id.* ¶¶ 12-13.

Mr. Milnes then forwarded the Complaint and Notice of Motion, but not the Request for Entry of Default, to Mary Jo Lavorata, the North American Human Resources Director for Micro Focus based in Micro Focus (US), Inc.'s main North American Office in Rockville, Maryland on

July 9, 2009. *Id.* ¶ 14. A Certificate of Surrender of Right to Transact Intrastate Business was then filed with the Secretary of the State of California for NetManage on July 16, 2009. Second Decl. of Courtney L. Wood ¶ 6. The employees who filed the Certificate of Surrender were not aware of the present litigation. *Id.* ¶ 7.

The court granted default judgment against the Plan in the amount of $135,434.42 on July 29, 2009. A disinterested attorney familiar with the case contacted Micro Focus[2] in Rockville, Maryland and notified the Micro Focus legal department of the lawsuit and the Order for Default Judgment on August 5, 2009. Aff. of Wood ¶ 16. This was the first time the Micro Focus legal department became aware of the Lawsuit. *Id.*

NetManage now moves to vacate the grant of default judgment entered on July 29, 2009.

## II. ANALYSIS

Rule 55(c) provides that a court may set aside an entry of default for "good cause shown." This "good cause" standard also governs vacating a default judgment under Rule 60(b). *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001). Under this standard, NetManage's motion should be denied if (1) NetManage engaged in culpable conduct that led to the default; (2) NetManage does not have a meritorious defense; or (3) reopening the default judgment would prejudice Dube. *Id.* at 926. If any of these three factors is met, then the court may deny the motion to vacate the default judgment. *American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1108 (9th Cir. 2000). NetManage bears the burden of demonstrating that these factors favor vacating the judgment. *TCI Group Life Ins. Plan*, 244 F.3d at 696.

### A. Culpable Conduct

NetManage argues that its conduct is excusable neglect caused by NetManage's recent merger into Micro Focus, Mr. Torres' relocation to England, the Certificate of Surrender filed with the Secretary of State of California, and a "breakdown in the lines of communication" between the Micro Focus legal department in Rockville, Maryland and Mr. Milnes and Mr. Torres in England.

---

[2] It appears from the papers before the court that the distinction between Micro Focus Limited and Micro Focus (US), Inc. is only that the former is the Micro Focus entity in the United Kingdom, while the latter is the entity in the United States. The court's references to "Micro Focus" hereinafter are a reference to these two entities collectively.

ORDER GRANTING DEFENDANT'S MOTION TO VACATE DEFAULT JUDGMENT—No. C-09-01470 RMW
DWR
4

Mot. 5-6. Dube argues that NetManage's conduct is culpable because the Certificate of Surrender shows that NetManage is attempting to evade liability, because NetManage actually received the complaint and chose not to respond to it, and because NetManage attempted to avoid litigation by not providing an updated address for service.  Pl.'s Opp'n 4-7.

The Ninth Circuit had previously held that a defendant's conduct was culpable if it had "received actual or constructive notice of the filing and failed to answer." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 690 (9th Cir. 1988).  More recently, however, the Ninth Circuit has rejected "per se rules" that bar late filings attributable to negligence. *Pincay v. Andrews*, 389 F.3d 853, 859-60 (9th Cir. 2004).  The Ninth Circuit now holds that a party must have "received actual or constructive notice of the filing of the action and *intentionally* failed to answer" for that party's conduct to be considered culpable. *TCI Group Life Ins. Plan*, 244 F.3d at 697 (emphasis in original).  "Intentional" in this context means more than simply a conscious choice, and requires that the conduct be "willful, deliberate, or evidence of bad faith." *Id.*  If a defendant provides a "credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process," then the defendant's behavior is not necessarily "intentional" such that its conduct is culpable. *Id.* To make its final decision on whether the failure to answer was intentional and culpable, the court considers the "bevy of equitable considerations" discussed in *Pioneer Investment Services Company v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993). *TCI Group Life Ins. Plan*, 244 F.3d at 697-98.  Culpable conduct can be found where there is "no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id.* at 698.

The court is not persuaded that NetManage's failure to respond to the complaint was a result of willful, deliberate, or bad faith behavior.  This lawsuit was filed months after the substantial merger between NetManage and Micro Focus (US), Inc., which involved multiple different corporate offices in at least two different countries.  As part of the merger, Mr. Torres, the NetManage employee whose Mountain View address CT Corporation had on file for NetManage, not only was newly employed in a different capacity, he also was relocated to a different country. Although NetManage may have been careless in failing to make sure that stable lines of

ORDER GRANTING DEFENDANT'S MOTION TO VACATE DEFAULT JUDGMENT—No. C-09-01470 RMW
DWR

communication were maintained for delivering any court summons or legal documents to its legal department, the recent merger creates a unique situation in which this neglect is excusable.

Evidence that NetManage's failure to respond to the lawsuit was the result of neglect is particularly persuasive because its failure to respond to the lawsuit does not reflect any devious, deliberate, willful, or bad faith motives. As companies in the United States, both NetManage and Micro Focus (US), Inc. are probably aware that the failure to respond to a lawsuit makes the entry of default judgment against them likely. It is also hard to imagine that either of them would not know that the Plan is subject to regulation under the Employee Retirement Income Security Act ("ERISA"), which permits a lawsuit to be brought against a plan's administrator "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant may be found." 29 U.S.C. § 1132(e)(2). Thus, regardless of whether NetManage submitted a Certificate of Surrender to the Secretary of the State of California, NetManage, as administrator of the Plan, could still be brought before the Northern District of California because Dube is a resident of this district. Compl. ¶ 2. Therefore, the court is persuaded that NetManage has offered a credible explanation of their failure to respond to the complaint in this lawsuit that is inconsistent with a devious, deliberate, willful, or bad faith failure to respond.

The cases Dube cites for his contrary position are easily distinguished. Several of the cases apply the Ninth Circuit's older, more rigid rule for culpability that this circuit no longer follows. *See*, *e.g.*, *E & J Gallo Winery v. Cantine Rallo*, 430 F. Supp. 2d 1064, 1086 (E.D. Cal. 2005) ("*Franchise Holding II, LLC, v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 926 (9th Cir. 2004) . . . is an anomalous case that does not follow precedent and was not followed by a subsequent en banc panel of the Ninth Circuit."). The remainder of the cases involve such egregious failures by defendants to properly defend their lawsuit that the court could easily find that their conduct was culpable. *See*, *e.g.*, *Employee Painters' Trust v. Ethan Enterprises, Inc.*, 480 F.3d 993 (9th Cir. 2007) (defendant's conduct culpable where defendant changed addresses during discovery, became non-responsive to both plaintiff and the court, and did not provide the court or other parties with updated contact information). NetManage's failure to defend this action, on the other hand, is

1 attributable to a ministerial error consistent with the complete absence of bad-faith motives.
2 Therefore, the court is persuaded that NetManage's failure to respond to the lawsuit is the result of
3 excusable neglect.

### B. Meritorious Defense

NetManage argues that it can raise two meritorious defenses to the lawsuit that justify setting aside default judgment.  First, NetManage argues that it can show that RSL's decision to deny Dube continued benefits was principled and reasonable and was not an abuse of discretion.  Mot. 6-9.  Second, NetManage contends that it can show that Dube filed this lawsuit after the Plan's contractual limitations period for filing a lawsuit had expired.  *Id.* at 9.  Dube responds by arguing that RSL did abuse its discretion in denying continued benefits, and that either Dube filed the lawsuit within the this contractual limitations period, or that the limitations period is unreasonable.  Pl's Opp'n 6-8.

"A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense." *TCI Group Life Ins. Plan*, 244 F.3d at 700.  This burden on the party seeking to vacate the default judgment "is not extraordinarily heavy." *Id.*  The defendant need only demonstrate facts or law showing the trial court that a sufficient defense is assertable, but does not need to show that it will prevail on that defense when moving to vacate a default judgment. *See id.* ("Under Guam law, this allegation was sufficient to raise the defense of waiver, and the question whether the factual allegation was true would be the subject of the later litigation.").

### 1. Abuse of Discretion

Where a plan's administrator has discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the court reviews the administrator's decision for abuse of discretion. *Montour v. Hartford Life & Accident Insurance Co.*, No. 08-55803, --- F.3d ---, 2009 WL 2914516, at *4 (9th Cir. 2009).  In cases where there is a conflict of interest, such as where the same entity that funds an ERISA benefits plan also evaluates claims, the court does not determine whether there is an abuse of discretion merely by determining if there is a reasonable basis for the administrator's decision. *Id.*  Rather, the court must consider multiple case-specific factors, including the administrator's conflict of interest, the quality and quantity of medical evidence, whether the plan administrator subjected the claimant to an in-person medical evaluation or relied

instead on a paper review of the claimant's existing medical records, whether the administrator provided its independent experts with all of the relevant evidence, and whether the administrator considered any contrary Social Security Administration disability determination. *Id.* at *5. "The weight the court assigns to the conflict factor depends on the facts and circumstances of each particular case." *Id.* This factor "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision," while it "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy." *Id.* (quoting *Metropolitan Life Ins. Co. v. Glenn*, --- U.S. ---, 128 S. Ct. 2343, 2351 (2008)). In the Ninth Circuit, the existence of a conflict is only a factor to be weighed in this analysis, and does not serve as a "sliding scale" modifying the level of deference or scrutiny given to the administrator's decision. *Id.*

This defense raises a question of fact sufficient to establish a meritorious defense. The court is unable to determine at this time how the conflict factor should affect the court's decision because the parties have not yet fully briefed the issue. There is evidence that RSL acted in good faith when it denied long-term disability benefits to Dube. RSL made its decision based in part on the opinions of Dr. Mahawar, who examined Dube, and Dr. Marion, who reviewed Dr. Wexler's psychiatric notes. CSS MDJ Decl. Ex. 7. RSL determined that these opinions showed that Dube would be able to work in his previous occupation, and that there was insufficient evidence to support Dr. Wexler's diagnoses of cognitive dysfunction and reflexive sympathetic dystrophy. *Id.* Even if the conflict factor is of great importance, this evidence supports the assertable defense that RSL did not abuse its discretion when denying Dube long-term disability benefits. Therefore, NetManage has shown that it can raise a meritorious defense.

### 2. Contractual Limitations Provision

NetManage raises as its "statute of limitations" defense that the Plan has a three-year contractual limitations period for filing a lawsuit that started running 90 days from the onset of total disability. Mot. 9. NetManage argues that this period started running at the latest 90 days from April 1, 2005, when Dube's claim was denied in a letter. *Id.*; CSS MDJ Decl. Ex. 6. Thus, NetManage argues that Dube had to file his complaint no later than June 30, 2008. Dube argues that

ORDER GRANTING DEFENDANT'S MOTION TO VACATE DEFAULT JUDGMENT—No. C-09-01470 RMW
DWR
8

1  the limitations period started to run ninety days after Dube's claim's final rejection on May 8, 2006
2  such that he only had to file his complaint before May 7, 2009. Pl.'s Opp'n 7-8. Dube also
3  apparently argues that NetManage's interpretation of the contractual limitations provision makes the
4  Plan's limitations period unreasonable because NetManage's reading "means that if someone
5  becomes disabled and the Plan pays benefits for 3 years and 90 days before denying benefits, then
6  the claimant is totally barred from filing a lawsuit." Pl's Opp'n 8.

7        The statute of limitations for recovering against a California employer under ERISA is four
8  years. *Wetzel v. Lou Ehlers Cadillac Group*, 222 F.3d 643, 648 (9th Cir. 2000). However, if a plan
9  provides for a shorter contractual limitations period, then the contractual limitations period will be
10 enforced so long as it is reasonable. *Sousa v. Unilab Corp. Class II Members Group Benefit Plan*,
11 252 F. Supp. 2d 1046, 1055 (E.D. Cal. 2002).

12       The Plan specifies in the paragraph labeled "LEGAL ACTIONS" that "[n]o action may be
13 brought after three (3) years . . . from the time written proof of loss is received." Aff. of Wood Ex.
14 1. The term "proof of loss" is not referenced anywhere else in the plan, and insufficient facts are
15 before the court to determine the date "proof of loss" was received. Both parties cite prior Ninth
16 Circuit precedent in support of their interpretation of the limitations provision. Because NetManage
17 has already established the meritorious defense that RSL did not abuse its discretion, the court
18 leaves open the interpretation of the limitations provision in the Plan.

19         **C.**     **Prejudice**

20       NetManage argues that Dube would not suffer prejudice as a result of setting aside default
21 because the record before the court would be limited only to the administrative record when
22 determining whether RSL abused its discretion. Mot. 10. Dube argues that he would be prejudiced
23 because he would be further delayed in receiving his disability benefits, and because any delay
24 creates a greater opportunity for fraud or collusion. The court is not persuaded that the delay would
25 cause any prejudice to Dube.

26       "To be prejudicial, the setting aside of a judgment must result in greater harm than simply
27 delaying the resolution of a case." *TCI Group Life Ins. Plan*, 244 F.3d at 701. Instead, the standard
28 is whether plaintiff's ability to pursue his claim will be hindered. *Id.* (quoting *Falk v. Allen*, 739

ORDER GRANTING DEFENDANT'S MOTION TO VACATE DEFAULT JUDGMENT—No. C-09-01470 RMW
DWR

1 F.2d 461, 463 (9th Cir. 1984)). For a delay to be prejudicial, it must "'result in tangible harm such as
2 loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion.'"
3 *Id.* (quoting *Thompson v. American Home Assurance Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996)).
4 Being forced to litigate on the merits cannot be considered prejudicial because the plaintiff would
5 have had to litigate the merits of the case had there been no default. *Id.*

6 Dube's statement that he is not receiving disability benefit payments is not an assertion of
7 prejudice. Were he and NetManage actively litigating this dispute, his disability benefit payments
8 would be similarly delayed. The present delay is not prejudicial. Dube has not provided any
9 plausible explanation of how setting aside default judgment would enable NetManage to collude
10 with others to deprive him of his long-term disability benefits. Dube will not suffer prejudice as a
11 result of setting aside the default judgment. The court grants the Plan's motion.

### III. ORDER

13 For the foregoing reasons, the court grants the Plan's motion to vacate the default judgment
14 entered against it. Both the default and default judgment are set aside. The Plan shall respond to the
15 complaint within twenty days. Plaintiff requested at hearing that he receive attorney's fees if the
16 court decided to set aside the default and vacate the default judgment. Although the court has the
17 power to condition the grant of a motion to set aside default and vacate a default judgment on the
18 payment of fees, the court does not find under the circumstances here that these fees should be
19 awarded.

22 **Dated:**   11/13/09                                  *Ronald M Whyte*
23                                                        RONALD M. WHYTE
                                                          United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

| | |
|---|---|
| Cassie Springer-Sullivan | css@ssrlawgroup.com |
| Michelle L. Roberts | mlr@ssrlawgroup.com |

**Counsel for Defendants:**

| | |
|---|---|
| William J. Rimel | bill.frimel@dlapiper.com |
| Rajiv Dharnidharka | rajiv.dharnidharka@dlapiper.com |
| Horace W. Green | horaceg@lifehealthlaw.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   11/16/09                                                          CCL
                                                                     **Chambers of Judge Whyte**

ORDER GRANTING DEFENDANT'S MOTION TO VACATE DEFAULT JUDGMENT—No. C-09-01470 RMW
DWR

11